COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Benton and Coleman
Argued at Salem, Virginia


MATTHEW J. BLACKSTONE
                                        MEMORANDUM OPINION[*] BY
v.   Record No. 1077-96-3               JUDGE JAMES W. BENTON, JR.
                                             OCTOBER 7, 1997
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
                    Charles H. Smith, Jr., Judge

            David L. Scyphers (Johnson, Scyphers &
            Austin, P.C., on brief), for appellant.

            Richard B. Smith, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.



     Matthew J. Blackstone was convicted of using obscene

language over the telephone in violation of Code § 18.2-427.

Blackstone contends that the trial judge erred in (1) allowing a

non-expert to testify about the operation of a caller

identification device; (2) allowing the admission of testimony

and photographic evidence of a caller identification device when

the reliability of the device had not been established; and (3)

not striking the Commonwealth's evidence because of inadequate

identification of Blackstone and Blackstone's unrefuted alibi.

For the reasons that follow, we affirm the conviction.

                              I.

     The statement of facts recites that Ms. Agner testified that

a recorded message was left on her answering machine on March 14,

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

1995 containing a detailed description of sexual acts the caller desired to perform on Agner. On May 11, 1995, Agner personally answered the telephone at 5:52 a.m. and listened as the caller spoke Agner's name and said, "how about a blow job?" She recognized the caller's voice as the voice on the March 14 message.

Agner had a caller identification device that showed the telephone numbers from which incoming calls were made. After she received the call on May 11, she immediately called the displayed number and received a busy signal. She called the number again and did not receive an answer. After Agner contacted the police, Investigator Ken Wilson photographed the caller identification device as it was displaying the date, May 11, the time, 5:52 a.m., and the telephone number of the offensive call.

Agner testified that she heard a telephone conversation between Investigator Wilson and a man who identified himself as Blackstone. She recognized Blackstone's voice as that of the caller on both the March 14 recording and the May 11 call. Agner also heard Blackstone's voice at trial and recognized it as the voice of the caller.

John Rohr, a regional security manager for a telephone company, testified that Blackstone was the sole account holder for the identified telephone number. Stating that he had general knowledge, though not "expertise," regarding caller identification devices, Rohr testified, over Blackstone's

objection, that a caller identification device retrieves the number of a caller from the telephone network, delivers the number to the device, and displays the number on the screen of the device. Rohr testified that he did not know the type of caller identification device used by Agner.

Investigator Wilson testified that he photographed Agner's caller identification device as it was displaying the telephone number and that he called the number on May 12, 1995. Wilson had spoken to Blackstone before and recognized Blackstone as the person who answered the telephone. In addition, the person who answered identified himself to be Blackstone. During that call, Blackstone told Wilson that he awakened at 5:15 a.m. on May 11 and left for work at approximately 5:45 a.m. Blackstone also said that, in the past, he had been to the Abingdon Nautilus Center. The evidence proved that Agner regularly used that health club.

Blackstone testified and denied making the calls. He testified that he worked on May 11 and could not have been home at the times the calls were made. He offered as evidence a document indicating that he was at work at 6:20 a.m. on May 11, 1995. Blackstone also testified that he lived alone but that other people often spent the night at his house.

The jury heard the March 14 message that was recorded on Agner's telephone machine. At the conclusion of the evidence, the jury convicted Blackstone of using obscene language on the

telephone in violation of Code § 18.2-427.

II.

Blackstone argues that the use of expert testimony to explain the caller identification device was both necessary and essential to the Commonwealth's case. We disagree.

Expert testimony is not necessary to establish the reliability of a caller identification device. See Tatum v. Commonwealth, 17 Va. App. 585, 588-90, 440 S.E.2d 133, 135-36 (1994). Although we implicitly held in Tatum that evidence of the information displayed on a caller identification device may be admitted only after proof that the device is reliable, id. at 589, 440 S.E.2d at 136, we did not require an expert to establish the reliability of the device. Rather, we ruled that the user of the caller identification device could testify as to facts establishing the reliability of the device, including that it had accurately displayed and identified telephone numbers on other occasions. Id. at 589-90, 440 S.E.2d at 136.

Agner testified that she had used the caller identification device in the past and that it had accurately listed the telephone numbers of the people who had called her. She also testified that she had returned telephone calls to persons whose numbers were displayed on the device after they had called her. We hold that this evidence provided a sufficient basis to support the trial judge's admission of the evidence pertaining to the caller identification device. See id.

Blackstone also argues that the trial judge erred in

5

allowing Rohr to testify because Rohr did not know the type of caller identification device used and claimed no expertise as to the operation of such devices. The trial judge has discretion to determine the qualification of a witness to testify as an expert. See Nichols v. Commonwealth, 6 Va. App. 426, 431, 369 S.E.2d 218, 220 (1988). Although Rohr did not claim to be an expert, he had knowledge and personal experience with caller identification devices. He merely described to the jury how a caller identification device retrieves the number of the caller from the telephone network, delivers the number to the device, and displays the number on the screen of the device. On this record, we cannot say that the trial judge abused his discretion in concluding that Rohr had sufficient knowledge of this matter to give value to his opinion. See Kern v. Commonwealth, 2 Va. App. 84, 86, 341 S.E.2d 397, 398 (1986).

III.

Blackstone also argues that the trial judge erred in admitting a photograph of the display from the caller identification device. "[A] photograph which is verified by the testimony of a witness as fairly representing what that witness has observed" and which bears some relevance to a matter in controversy is admissible in evidence. Ferguson v. Commonwealth, 212 Va. 745, 746, 187 S.E.2d 189, 190 (1972). Agner testified that Investigator Wilson photographed the device as it was displaying the telephone number of the May 11 caller.

6

Investigator Wilson also testified that he photographed the display on the caller identification device. Thus, testimony established that the photograph depicts the display the witnesses observed. The photograph is relevant because it shows that a telephone call was placed to Agner's telephone from the number listed on the display. Accordingly, we cannot say that the trial judge abused his discretion in admitting the photograph.

IV.

Blackstone argues that with Agner's limited opportunity to hear his voice, Agner's identification of his voice was not reliable as a matter of law. Blackstone also argues that the recording of the March 14 message was so unclear it had to be played twice for the jury and, thus, could not have provided the basis for Agner to identify his voice. He further argues that the first time Agner could attribute the voice to him was when Investigator Wilson called Blackstone and that she identified him only because she had no other voices with which to compare it.

All of these objections, however, merely relate to the weight to be given Agner's testimony concerning her identification of Blackstone's voice on the recording and during the telephone calls. See Hammer v. Commonwealth, 207 Va. 165, 168, 148 S.E.2d 896, 897 (1966). The jury was entitled to weigh the evidence, observe the demeanor of the witnesses, and assess their credibility. See Campbell v. Commonwealth, 14 Va. App. 988, 994, 421 S.E.2d 652, 655-56 (1992).

7

Viewed in the light most favorable to the Commonwealth, see Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), the evidence proved that the March 14 and May 11 obscene telephone calls were made to Agner from the same telephone number. Agner testified that when she received the call on May 11, she recognized the voice of the caller as the voice on the March 14 recording. When Investigator Wilson called the number displayed on the caller identification device and spoke to Blackstone, Agner listened to the voice and identified it as the voice of the caller from the two previous calls. Agner also identified Blackstone's voice as that of the caller when she heard him testify in court.

The jury heard the recording of the March 14 call and also listened to Blackstone's testimony during trial. Thus, the jury had an independent opportunity to test the voice identification evidence itself. Furthermore, contrary to Blackstone's argument, the jury was not required to believe his testimony that he was not the person who made the telephone calls. His documentary evidence that he was at a place of employment at 6:20 a.m. on May 11 did not prove that he was not at home at 5:52 a.m. when the call was made to Agner's telephone.

We, therefore, hold that the trial judge did not err in admitting the testimony and photographic evidence of the caller identification device and that the evidence was sufficient to prove beyond a reasonable doubt that Blackstone committed the

8

offense.

                                        <u>Affirmed</u>.