DECISION
Defendant-appellant, Oliver B. Duff, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding appellant guilty of two counts of aggravated arson, one count of felonious assault on a peace officer, and one count of failure to comply with an order of a police officer.
The charges against appellant arose out of an incident occurring on the evening of May 15, 1999, in which the apartment of his estranged wife, Nancy King Duff, was set on fire, and appellant was arrested following an automobile chase from the scene.
The prosecution presented the testimony of Officer Mark Nelson, Columbus Division of Police. Officer Nelson testified that on the day in question, he responded to a burglary in progress call on Burnell Circle in Columbus. Based on by- stander information, Officer Nelson went to the rear of 3980 Burnell Circle West and observed smoke and a broken out rear window. He then kicked in the rear door and observed a pile of clothing and miscellaneous items burning at the foot of the apartment stairs. The flames were three to five feet high and about to spread to some window drapes nearby. With the assistance of another officer who arrived at the scene, Officer Nelson removed the pile of combustibles by kicking the pile and dragging some larger cloth items near the base which were not yet burning. The officers were able to move the bulk of the burning items outdoors. Although the officers then used a fire extinguisher taken from a police cruiser, they were unable to completely put out the fire, which was hot enough to set fire to landscaping mulch outside the apartment. The officers attempted to stamp out smoldering items remaining inside, and the fire department thereafter arrived to extinguish the remaining hot spots.
Upon checking the interior of the apartment to ascertain if anyone needed to be evacuated, Officer Nelson observed that the apartment appeared to have been ransacked, with furniture demolished, drawers pulled out and emptied, and items strewn about the premises.
Some time after the fire was extinguished, Officer Nelson observed a gold Chevrolet Monte Carlo in the parking lot that fit the description of a vehicle that had been seen at the scene earlier that day. Officer Nelson and his partner, Officer Branam, approached the vehicle with guns drawn, and ordered the occupant to turn off the ignition. The driver of the vehicle, whom Officer Nelson identified as appellant, instead accelerated away from the officers and drove across the grass around the rear of the apartments. Officer Branam ran to his cruiser, and Officer Nelson pursued appellant's vehicle on foot. Appellant's vehicle re-emerged from behind the apartments and appellant drove at a high rate of speed down Burnell Circle West, almost hitting two small children. After appellant reached the end of the cul-de-sac he returned towards Officer Nelson, who attempted to order him to stop. Instead, appellant again accelerated towards Officer Nelson, nearly striking him. Officer Nelson fired a single shot at the vehicle as it passed by, without effect. Appellant, with Officer Branam in pursuit in a cruiser, fled down the street out of Officer Nelson's view.
Officer Branam testified for the prosecution and substantially corroborated Officer Nelson's version of events through the discovery of the fire in the apartment. In addition, Officer Branam testified that soon after the fire was extinguished, the occupant of the apartment, Nancy King Duff, arrived home. Based on information she provided, the arson investigator, who was at the scene, determined that appellant was a suspect and Officer Branam and the arson investigator began filling out paper-work. At this time Officer Branam observed appellant arriving in a gold-colored Monte Carlo. After circling around and behind buildings, as described by Officer Nelson, Officer Branam observed appellant escaping down the street and gave chase. As appellant turned around on the cul-de-sac, he struck the arson investigator's vehicle, and nearly ran over Officer Nelson. Officer Branam continued to pursue appellant away from the scene, with appellant driving at a very high rate of speed through several busy intersections. Officer Branam had difficulty maintaining contact during the pursuit because of the speed maintained by appellant, who appeared to nearly lose control of his vehicle several times and was driving other vehicles off the road in both directions to avoid collisions. Officer Branam described appellant as travelling in excess of one hundred miles per hour at some points and running red lights through very busy intersections. Appellant eventually lost control of his vehicle and rammed a heavy metal sign post, completely disabling the car. Despite having suffered substantial injury in the accident, appellant attempted to escape on foot and was extremely difficult to subdue even with the assistance of other officers who had arrived at the scene. Officer Branam's impression was that appellant was very intoxicated at the time of his arrest.
The state also presented the testimony of John Barnett, a neighbor at the arson site. He testified that on the evening in question, around 6 p.m., he was working outside on his car when a gold Monte Carlo pulled up and soon thereafter, he heard glass shattering in the direction of 3980 Burnell Circle West. He then saw the driver of the Monte Carlo carrying clothes out of the apartment, and soon thereafter observed smoke in the unit. Police then arrived and dragged out some burning materials. A short time later, the gold Monte Carlo returned to the scene and the police chase ensued. Barnett then went inside with his children when he heard a gunshot.
Nancy King Duff, appellant's wife at the time of the incident, testified for the state that on the day in question, she had only been married to appellant for a matter of weeks. She described the relationship as good for about the first week, but that thereafter appellant began drinking daily and became abusive. Over objection from the defense, she testified that she brought domestic violence charges against appellant and secured a protective order against appellant and asked him to vacate the premises. Appellant nonetheless harassed her by calling her at work. Again over objection, Ms. Duff described the contents of the phone calls as threatening, in that appellant would threaten to kill her and that she would not be safe at home or at work.
On the day in question, Ms. Duff testified that appellant had called her at work and threatened to "tear everything up in the house." (Tr. 129.) Appellant then came to her place of employment, but co-workers locked the door and told Ms. Duff to hide. She then left work early because she was frightened, and went to her daughter's house to call the police and ask them to meet her at her apartment on Burnell Circle West. She met police at her apartment, secured some personal items and left to go to her daughter's house. Later that day, she returned to her apartment and found it roped off as a crime scene because of the recent fire. While discussing the situation with police, she observed appellant pull onto the street in a gold Monte Carlo which she recognized as his brother-in-law's car. She then observed appellant flee and the police in pursuit.
Officer Brett Bodell, with the Columbus Division of Police, also testified for the prosecution. He stated that on the day in question, he transported appellant to the emergency room at OSU East Hospital after his arrest. Appellant was not cooperative with medical personnel and was generally belligerent. Although the officers did not attempt any interrogation, or read appellant his rights, appellant nonetheless volunteered numerous aggressive statements including the specific assertion: "I tried to run the officer over. I wish he would have shot me." (Tr. 261.) After appellant made this declaration, Officer Bodell and other police officers present wrote down these statements made by appellant, and signed the document.
The state also presented testimony of Drucilla Elmore, first cousin of Nancy King Duff. Ms. Elmore testified that on May 15, 1999, she received a phone call from appellant. Based on her caller ID display, Ms. Elmore identified the call as coming from Ms. Duff's apartment on Burnell Circle West. Ms. Elmore was familiar with appellant's voice and clearly identified him in the phone call. The defense made a hearsay objection to use of the caller ID feature to indicate the location from which the call was made. The defense also objected as to the contents of the phone call by appellant to Ms. Elmore, but the court allowed Ms. Elmore to describe the conversation. Ms. Elmore described appellant's demeanor over the phone as angry. He threatened Ms. Elmore, and told her that if Ms. Duff were in Ms. Elmore's house, he would kill Ms. Duff. Ms. Elmore then drove to the apartment to meet her sister, and observed appellant's arrival at the scene and the subsequent chase.
David Thompson, a former fire investigator for the Columbus Fire Department, testified for the prosecution about his investigation of the fire scene. He stated that from his investigation, he was able to rule out any accidental sources of ignition, based upon the location of the fire and its progression. He did not discover any traces of accelerant in the burned materials analyzed from the scene. Based upon the damage caused to the floor by the fire, the amount of soot and smoke damage on the first floor, and the quantity of flammable materials which would have fueled growth of the fire, in conjunction with the broken out front and back windows of the apartment, Thompson's conclusion was that the fire would very readily have continued to burn and accelerate. Based upon his experience with similar multiple-unit townhouse buildings, the fire, if it had not been extinguished, would rapidly have progressed through the entire unit, up into the attic, and laterally through the attic to other units. Various synthetic materials present in the form of drapes, furniture, and carpeting would have contributed smoke that could have proved fatal to occupants in the affected unit and neighboring units even before the fire itself had spread.
At the close of the state's case, counsel for appellant moved under Crim.R. 29 for acquittal on a variety of grounds, all of which were overruled by the trial court.
Olivia Duff, appellant's sister, testified on behalf of appellant. She described picking up appellant at the apartment on the morning of the fire, and personally observed that the apartment was in great disorder although the windows were not broken out. Thereafter, appellant spent the day with her until about four in the afternoon. She was unable to account for appellant's whereabouts thereafter.
The defense thereafter rested without presenting additional witnesses. Following deliberation, the jury returned verdicts finding appellant not guilty of burglary, but guilty of two counts of aggravated arson, one count of felonious assault on a peace officer, and one count of failure to comply with a police officer's signal. The court subsequently sentenced appellant to concurrent terms of eight years and six years on the two aggravated arson counts, and additional consecutive terms of ten years on the felonious assault count and eighteen months on the failure to comply count, for a total of a nineteen and one- half year sentence.
Appellant has timely appealed and brings the following assignments of error:
 APPELLANT'S FIRST ASSIGNMENT OF ERROR: TRIAL COURT ERRED AS A MATTER OF LAW OR ABUSED ITS DISCRETION IN NOT GRANTING A JUDGMENT OF ACQUITTAL AS TO COUNT TWO FOR THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 APPELLANT'S SECOND ASSIGNMENT OF ERROR: TRIAL COURT ERRED AS A MATTER OF LAW OR ABUSED ITS DISCRETION IN NOT GRANTING A JUDGMENT OF ACQUITTAL AS TO COUNT TWO FOR THERE WAS NO EVIDENCE OF A SUBSTANTIAL RISK OF PERSONAL INJURY.
 APPELLANT'S THIRD ASSIGNMENT OF ERROR: TRIAL COURT ERRED OR ABUSED ITS DISCRETION IN ADMITTING EVIDENCE OF APPELLANT'S PRIOR BAD ACTS.
 APPELLANT'S FOURTH ASSIGNMENT OF ERROR: TRIAL COURT ERRED OR ABUSED ITS DISCRETION IN ADMITTING HEARSAY EVIDENCE ON A CALLER IDENTIFICATION MACHINE.
Appellant's first and second assignments of error assert that the trial court erred in not granting appellant's Crim.R. 29 motion for acquittal at the close of the state's evidence, because the evidence did not support a substantial risk of harm to persons as an element of the second count of the indictment, aggravated arson in violation of R.C.2909.02(A)(1). This section provides that "[n]o person, by means of fire or explosion, shall knowingly * * * create a substantial risk of serious physical harm to any person other than the offender."[1] Although appellant's assignments of error are stated in terms of manifest weight of the evidence, a Crim.R. 29 motion for acquittal raises issues of sufficiency of the evidence. The legal concepts of sufficiency of the evidence and manifest weight of the evidence involve different determinations. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. As to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Id., citing Black's Law Dictionary (6 Ed. 1990) 1433. A determination as to "[w]hether the evidence is legally sufficient to sustain a verdict is a question of law." Thompkins, at 386. The relevant inquiry on review of the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia
(1979), 99 S.Ct. 2781, 2789. As opposed to the concept of sufficiency of the evidence, the court in Thompkins noted that:
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence
sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.)
Thompkins, at 387. (Quoting Black's Law Dictionary, supra, at 1594; emphasis added; citations omitted.)
In Thompkins, the court cited with approval language from State v.Martin (1983), 20 Ohio App.3d 172, 175, in which that court held that, in considering a manifest weight challenge, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." In State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported, at page 2, this court noted that, when called upon to consider the issue of manifest weight of the evidence, "the appellate court must engage in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt."
Under either the manifest weight or sufficiency standard, appellant does not establish reversible error in this case. Aggravated arson under R.C. 2902.02(A)(1) requires that the appellant knowingly caused a fire that created a substantial risk of serious physical harm to a person other than the offender. The indictment in the present case originally alleged appellant knowingly created a substantial risk of physical harm to three named occupants of neighboring apartments, and unnamed other occupants. At the close of the state's evidence the state moved to amend the indictment to strike the names of two of the named individuals who had not been located. Although it was not alleged that anyone else was present in Ms. Duff's apartment when appellant set the fire, and there was no direct testimony providing evidence of actual presence by other persons in the neighboring units in the building at the precise time of the fire, Ms. Duff did testify that the neighboring units were inhabited, and generally the inhabitants were present at the hours when the fire occurred. There was testimony about the presence of other persons around the building and throughout the complex, including small children. The arson investigator described the great risk of the fire spreading, based upon his observations at the scene. Substantial risk of serious physical harm to other persons could be established based upon appellant knowingly setting a fire in one unit, even if he knew it was empty at the time, based upon the overwhelming probability that one or more of the neighboring units would have occupants at home, particularly with children in the neighborhood. We accordingly find that the trial court did not err in overruling appellant's Crim.R. 29 motion, because the evidence was legally sufficient to establish the elements of aggravated arson. We further find that the verdict was not against the manifest weight of the evidence. Appellant's first and second assignments of error are accordingly overruled.
Appellant's third assignment of error asserts that the trial court erred in admitting evidence of prior bad acts by appellant in violation of Evid.R. 404(B):
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
The prosecution introduced evidence of prior bad acts or conduct by appellant through several witnesses. Principally, Nancy King Duff testified about appellant's abusive behavior during the brief time they lived together, his threats to kill her, his harassment at work, including coming to her place of work on the day of the fire, and generally the circumstances surrounding the relationship, which included a protective order against appellant. Additionally, Ms. Elmore testified that appellant threatened to kill Ms. Duff shortly before the fire. All of these instances of prior bad acts by appellant were clearly admissible in the present case under the exceptions for proof of motive, intent, or absence of mistake or accident. State v. Parker (Dec. 9, 1999), Cuyahoga App. No. 75117, unreported; State v. Sargent (1998), 126 Ohio App.3d 557,568-570. In contrast, the trial court was careful to exclude any reference to appellant's prior unrelated convictions and conduct, which had no relevance to the current charges against appellant. We therefore find that the trial court did not err in admitting evidence of appellant's threats and other circumstances of his relationship with Ms. Duff. Appellant's third assignment of error is accordingly overruled.
Appellant's fourth assignment of error asserts that the trial court erred in permitting Ms. Elmore to testify that her caller ID device allowed her to determine that a phone call she received from appellant was placed from Nancy King Duff's apartment around the time of the fire, thus placing appellant at the scene.
Appellant advances no authority on appeal for the proposition that information generated by a caller ID device is inadmissible hearsay. While no Ohio cases on the issue have been discovered, other state courts have consistently held that caller ID information provided to a telephone user is based on computer-generated information and not simply repetition of prior recorded human output or observation, and thus does not fall within the scope of the hearsay rule. Culbreath v. State (Ala.App. 1995), 667 So.2d 156; Tatum v. Commonwealth (1994), 17 Va. App. 585,440 S.E.2d 133; Watlington v. Commonwealth (Nov. 7, 2000), Va. App. No. 2332-99-3, unreported. Caller ID evidence, therefore, will not be inadmissible on hearsay grounds, but may be attacked based on a lack of foundation regarding the reliability of the device, or by otherwise demonstrating the unreliability of the information disclosed by it.Tatum, 17 Va.App. at 588, 440 S.E.2d at 135; Wright Miller, 31 Fed. Prac. Proc., Evidence Section 7110. In the present case, while trial counsel for appellant did object to the caller ID information on a hearsay basis, there was no objection for lack of foundation, nor is plain error in this respect alleged on appeal. Since no basis for error in admitting the caller ID information is shown, appellant's fourth assignment of error is accordingly overruled.
In accordance with the foregoing, appellant's first, second, third, and fourth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and LAZARUS, JJ., concur.
[1] The second aggravated arson charge for which appellant was convicted, count three of the indictment, was based on the same conduct by appellant, but alleged a violation of R.C. 2909.02(A)(2), causing physical harm to an occupied structure by means of fire or explosion. The question of whether these two offenses should have been merged for sentencing purposes was raised neither at trial nor in this appeal, and accordingly will not be addressed in this decision.