COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


SAMUEL FERGUSON

                                               MEMORANDUM OPINION[*] BY

v.       Record No. 1171-04-2               JUDGE LARRY G. ELDER
                                                      APRIL 26, 2005

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Walter W. Stout, III, Judge

Gary R. Hershner for appellant.

Virginia G. Theisen, Assistant Attorney General (Judith Williams
Jagdmann, Attorney General; Margaret W. Reed, Assistant Attorney
General, on brief), for appellee.


Samuel Ferguson (appellant) appeals from his bench trial convictions for possessing

cocaine, heroin and marijuana.  On appeal, he contends the search that yielded these drugs

violated his constitutional rights because the police lacked actual or apparent authority to enter

the house in which he resided and, thus, that the trial court should have granted his motion to

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

suppress. We hold the challenged entry and subsequent searches were reasonable based on apparent authority,[1] and we affirm, subject to remand solely for the correction of a clerical error.[2]

## I.

Generally, evidence obtained as the result of a search or seizure that violates a defendant's Fourth Amendment rights is inadmissible at a criminal trial and must be suppressed. E.g., Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691, 6 L. Ed. 2d 1081 (1961); Weeks v. United States, 232 U.S. 383, 391-93, 34 S. Ct. 341, 344, 58 L. Ed. 652 (1914). On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to

---

[1] On brief, appellant included the following additional question presented:

> Did the court err by overruling the motion to suppress even though [appellant] may have eventually consented to a search of his person and his belongings where he was compelled to enter the premises to obtain his jacket because the weather was cold, especially under the egregious circumstances of this case?

Appellant presented no separate argument on this issue.

"Questions 'unsupported by argument, authority, or citations to the record do not merit appellate consideration.'" Kane v. Szymczak, 41 Va. App. 365, 370, 585 S.E.2d 349, 352 (2003) (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992)); see also Rule 5A:20(e) (requiring appellants to brief the "principles of law, the argument, and the authorities relating to each question presented"). Appellant waived this question on appeal by failing to present any separate principles of law or authority in support, and we do not consider it as a separate issue.

[2] Following the denial of appellant's motion to suppress, he entered conditional guilty pleas, as reflected by the transcript of February 18, 2003. However, the February 18, 2003 conviction order does not reflect that those pleas were conditional. Because the transcript clearly reflects the pleas were conditional and the Commonwealth does not contend otherwise, we remand to the trial court for the sole purpose of correcting this clerical error in the conviction order. See Tatum v. Commonwealth, 17 Va. App. 585, 592, 440 S.E.2d 133, 138 (1994).

support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996)). However, we review *de novo* the trial court's application of defined legal standards. Ornelas, 517 U.S. at 699, 116 S. Ct. at 1663.

A.

ENTRY OF PREMISES

At a hearing on a defendant's motion to suppress evidence allegedly obtained in violation of the Fourth Amendment, the defendant has the burden of proving he had a reasonable expectation of privacy in the place searched, Barnes v. Commonwealth, 234 Va. 130, 135, 360 S.E.2d 196, 200 (1987) (citing Rakas v. Illinois, 439 U.S. 128, 131 n.1, 99 S. Ct. 421, 424 n.1, 58 L. Ed. 2d 387 (1978)), and the Commonwealth has the burden of proving that the relevant search or seizure did not violate the defendant's Fourth Amendment rights, Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989); Alexander v. Commonwealth, 19 Va. App. 671, 674, 454 S.E.2d 39, 41 (1995).

Whether an individual maintains a legitimate expectation of privacy in a particular premises to be searched

> involves a two-part inquiry. First, we must determine whether the individual has manifested "a subjective expectation of privacy" in the object of the challenged search. This inquiry is a factual determination to which we must give deference on appeal. Second, we must determine whether the expectation of privacy is objectively reasonable, one that society is willing to recognize as legitimate. This is a legal determination, requiring no deference on review.

Johnson v. Commonwealth, 26 Va. App. 674, 683-84, 496 S.E.2d 143, 148 (1998) (quoting Wellford v. Commonwealth, 227 Va. 297, 301, 315 S.E.2d 235, 237 (1984)) (citations omitted).

- 3 -

In determining whether an expectation of privacy is objectively reasonable, a court looks to the totality of the circumstances,

> "includ[ing] whether the defendant has a possessory interest in . . . the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises."

McCoy v. Commonwealth, 2 Va. App. 309, 312, 343 S.E.2d 383, 385 (1986) (quoting United States v. Haydel, 649 F.2d 1152, 1155 (5th Cir. 1981)).

"Searches and seizures inside a home without a warrant are presumptively unreasonable" under the Fourth Amendment. Payton v. New York, 445 U.S. 573, 586-90, 100 S. Ct. 1371, 1380-82, 63 L. Ed. 2d 639 (1980). However, the warrantless entry and search of a home is reasonable when justified by exigent circumstances or consent. Robinson v. Commonwealth, 31 Va. App. 479, 484, 524 S.E.2d 171, 173 (2000). Valid consent may be obtained "either from the individual whose property is searched or from a third party who possesses common authority over the premises." Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797, 111 L. Ed. 2d 148 (1990); see Jones v. Commonwealth, 16 Va. App. 725, 727, 432 S.E.2d 517, 518-19 (1993). A mere property interest may be relevant but is not necessarily determinative. United States v. Matlock, 415 U.S. 164, 172 n.7, 94 S. Ct. 988, 993 n.7, 39 L. Ed. 2d 242 (1974); see 4 Wayne R. LaFave, Search and Seizure § 8.3(a), at 144 (4th ed. 2004). For example, a motel clerk or apartment owner ordinarily may not provide valid consent for the search of a registered guest's room or lessee's apartment. See Chapman v. United States, 365 U.S. 610, 617-18, 81 S. Ct. 776, 780, 5 L. Ed. 2d 828 (1961) (holding landlord could not validly consent to search of house he rented to another); see also Stoner v. California, 376 U.S. 483, 487-89, 84 S. Ct. 889, 892-93, 11 L. Ed. 2d 856 (1964) (holding hotel clerk could not give valid consent for search of customer's room). "[T]he rule [is not] otherwise 'merely because the rental agreement

is not reduced to writing or because the rent is paid in kind rather than in currency.'"  4 LaFave, supra, § 8.5(a), at 210 (quoting State v. Coyle, 574 A.2d 951, 962 (N.J. 1990)).

"[E]ven if the party giving consent does not have actual authority to consent, 'apparent authority' may be sufficient, if the circumstances[, viewed objectively,] would lead a reasonable officer to conclude that the person providing consent had the requisite authority to do so." Bryant v. Commonwealth, 39 Va. App. 465, 471, 573 S.E.2d 332, 335 (2002) (quoting Jones, 16 Va. App. at 727-28, 432 S.E.2d at 519 (noting motel staff may consent to search of vacant room and that staff member's apparent authority to consent may be sufficient if officer "could reasonably have believed that the room was vacant such that the maid had [actual] authority to consent to the search")); see Rodriguez, 497 U.S. at 188-89, 110 S. Ct. at 2801 (noting standard is an objective one).

Here, we assume without deciding that appellant had a subjective expectation of privacy in some portion of the rooming house at 3111 Third Avenue.  The trial court implied as much when it concluded "[t]here isn't any question that [appellant] had some relationship with the property" and that appellant "seems like a reasonable person . . . who has a belief that he can be there."  However, the trial court also found apparent authority supported the entry because the police officers reasonably believed Stephanie Metzger had actual authority to consent to the entry.  The evidence supported this finding.  Thus, we need not consider whether Metzger had actual authority to consent to the entry.

Metzger and a woman she introduced as Linda Woods, her attorney, approached Officer James Baldwin in the vicinity of the boarding house and told him she had found "squatters" on her property.  Woods related to Officer Baldwin "[t]he details of the case.  That the property was in dispute.  That it was co-owned by [Metzger] and [Beth] Kolberg."  Woods reported that "there were no signed leases" and that "no one was to be in the house."  She also related what Kolberg

had said on deposition--that "she had not given permission to anyone to be in the premises" and that "someone named Sam . . . was a squatter." Metzger and Woods related the same information to Officer Janet Patrick when she arrived on the scene in response to Officer Baldwin's call. Although neither officer knew the women and neither requested identification, Officer Baldwin testified that Ms. Metzger

> had a lot of information about the house, as far as what was going on, the problems she would have, and her locks had been changed. I mean, she knew a lot about the information. It wasn't the fact that she just showed up and said, hey, there's somebody in my house and we ran over there. . . . We did try to investigate as much as possible.

Finally, Metzger and Woods remained at the scene while the officers "investigate[d] what exactly was going on" at the boarding house, thereby subjecting themselves to criminal penalties if the information they had given to the police proved to be false. Cf. Russell v. Commonwealth, 33 Va. App. 604, 616-17, 535 S.E.2d 699, 705 (2000) (noting reliability of criminal informant's tip is enhanced where identity is known to police so that informer may be subject to criminal penalties if information is found to have been fabricated).

Further, nothing the officers learned upon their arrival at the boarding house required them to cease their efforts to investigate Metzger's complaint. Appellant claimed he had permission to be in the house while working on it, but he produced identification that bore a different address and provided no documentation to establish his right to occupy the premises. Appellant claimed he showed Officer Patrick his "insurance papers" for the boarding house when the police first arrived on April 8, 2003, but Officer Patrick could not recall whether appellant showed her such documentation. Appellant introduced at trial a sheet of insurance payment coupons bearing his name and the address of the boarding house, but the coupons did not specifically indicate what personal or real property was insured. Further, the coupons

covered only the period from June 21, 2002, through January 21, 2003, and all coupons remained attached to the sheet, calling into question whether any of the premium payments had been made.

This evidence, viewed in the light most favorable to the Commonwealth, rendered reasonable the officers' belief that Ms. Metzger had authority to consent to their entry and search of the premises. Accordingly, Metzger's apparent authority legitimized the presence of the police on the premises.

B.

SEARCH OF APPELLANT AND HIS BACKPACK

The trial court found that while Officer Patrick was legitimately in the house, appellant consented to a search of his person and his backpack. The evidence, viewed in the light most favorable to the Commonwealth, supports that finding.

"[S]earches made by the police pursuant to a valid consent do not implicate the Fourth Amendment." McNair v. Commonwealth, 31 Va. App. 76, 82, 521 S.E.2d 303, 306 (1999) (en banc). "Consent to a search must be freely and voluntarily given." Davis v. Commonwealth, 37 Va. App. 421, 433, 559 S.E.2d 374, 379 (2002) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S. Ct. 2041, 2048, 36 L. Ed. 2d 854 (1973)). "When the Commonwealth bases its authority to conduct a warrantless search upon a claim that the defendant consented, the Commonwealth has the burden at trial to prove by a preponderance of the evidence that the consent was voluntary." Camden v. Commonwealth, 17 Va. App. 725, 727, 441 S.E.2d 38, 39 (1994). Whether a consent to search was voluntarily given "is a question of fact to be determined from the totality of all the circumstances." Schneckloth, 412 U.S. at 227, 93 S. Ct. at 2048. "The fact of custody alone is not enough in itself to demonstrate a coerced consent to search." Lowe v. Commonwealth, 218 Va. 670, 678, 239 S.E.2d 112, 117 (1977) (citing United States v. Watson, 423 U.S. 411, 424, 96 S. Ct. 820, 828, 46 L. Ed. 2d 598 (1976)). In

determining whether a consent to search is voluntary, "'it is appropriate to consider the characteristics of the accused.'" <u>Londono v. Commonwealth</u>, 40 Va. App. 377, 402, 579 S.E.2d 641, 653 (2003) (quoting <u>United States v. Lattimore</u>, 87 F.3d 647, 650 (4th Cir. 1996) (en banc)). "[T]he absence of proof that [the suspect] knew he could withhold his consent, though it may be a factor in the overall judgment, is not to be given controlling significance." <u>Watson</u>, 423 U.S. at 424, 96 S. Ct. at 828.

While legitimately in an upstairs bedroom of the house pursuant to Metzger's consent, Officer Patrick saw in plain view in the trashcan "a corner to a plastic bag with white residue." At about that same time, appellant appeared, reported that the room was his, and said he had come to get his jacket. Officer Patrick said appellant was free to get his jacket. She then asked appellant if he had any drugs or weapons on him, and appellant said he did not. Officer Patrick asked, "Can I search you?" and appellant responded, "yes and put his hands up" to facilitate a search. The trial court found as a fact, "based on the Court's judgment about [appellant] as he was on the stand," that appellant was "a fairly cooperative person" and that his consent to the search of his person was voluntary. The evidence supports that finding. Officer Patrick was the only officer with appellant at that time. Appellant was not in custody at that time and had come to the room voluntarily to get his jacket. Officer Patrick told him he was free to get his jacket before she asked for permission to search him.

The trial court, in stating that appellant "did give permission in both cases for the search," also concluded that appellant voluntarily consented to a search of his room and its contents. We hold the evidence supports that finding, as well. Although appellant was under arrest and had been handcuffed and advised of his rights, he was at the boarding house, in what he claimed to be his room, rather than at the police station or some other coercive environment. Although other officers were in the doorway to the room, only Officer Patrick was in appellant's

immediate presence. Officer Patrick testified that she asked appellant for his consent to search in a normal, "calm" tone of voice, which she demonstrated for the court. None of the officers had their weapons drawn. Based on these facts, the trial court's conclusion that appellant's consent to a search of his room was voluntary was not plainly wrong. See, e.g., Lowe, 218 Va. at 674-78, 239 S.E.2d at 115-17 (upholding finding of voluntary consent where defendant was "in custody, handcuffed, sitting on the floor," and "surrounded by . . . armed [police officers]," and refused to sign "Consent to Search Form" but said, "You go ahead and search"); see also United States v. Burns, 298 F.3d 523, 541 (6th Cir. 2002) (holding consent valid despite handcuffs where defendant "was not confined in the police station" and consent resulted from "friendly conversation"); People v. James, 561 P.2d 1135, 1140 (Cal. 1977) (holding fact "that a defendant is under an arrest and in handcuffs at the time of giving consent does not per se make a consent to search involuntary" (citation omitted)). Thus, Officer Patrick's search of the backpack on appellant's bed while the two stood in appellant's bedroom was not unreasonable, and the trial court properly denied appellant's motion to suppress the drugs found inside the backpack.

## II.

For these reasons, we hold consent based on apparent authority from an owner of the premises justified police entry of the boarding house. When the police later encountered appellant inside the rooming house, he voluntarily consented to a search of his person and his room. All challenged searches were reasonable, and the trial court did not err in denying appellant's motion to suppress. Thus, we affirm appellant's convictions and remand solely for the correction of a clerical error.

<u>Affirmed and remanded with instructions.</u>