No. 87,679

STATE OF KANSAS, *Appellee*, v. DANIEL F. SCHUETTE, *Appellant*.

(44 P.3d 459)

Opinion filed April 19, 2002.

*Clinton W. Lee*, of Scott, Quinlan, Willard & Barnes, L.L.C., of Topeka, argued the cause and was on the brief for appellant.

*Thomas G. Lemon*, special prosecutor, of Fisher, Cavanaugh, Smith & Lemon, P.A., of Topeka, argued the cause, and *Todd D. Powell*, of the same firm, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This is Daniel F. Schuette's direct appeal of his convictions of criminal threat under K.S.A. 21-3419(a)(1) (a person felony) and harassment by telephone under K.S.A 21-4113(a)(2) (a nonperson misdemeanor). Our jurisdiction is under K.S.A. 20-3018(c).

The relevant facts can be tersely summarized. In the early morning hours of May 26, 2000, Theodore Wright received two calls at his home, which was located behind Don's Steak House in Shawnee County, Kansas. During the first call, Wright said, "Hello," but did not hear anyone on the other line and hung up the phone. The second call came immediately afterward. The caller was angry, sounded drunk, and was yelling loudly.

Wright recognized the caller's voice as that of Daniel Schuette. Schuette talked for several minutes. Wright remembered Schuette making the following comments: "I'm going to f. . . you in the butt, you fagot. I'm going to break your neck and your arms and your legs and chop you up in little pieces and I'm going to kill you."

Wright knew Schuette's voice from the several times he had heard him speak while dining at Don's Steak House. He had previously conversed with Schuette by phone when he asked Schuette to stop harassing the waitresses at the restaurant.

Wright's fiance, Lori Holstead, was with him when he received the call. At some point, Wright turned the phone so Holstead could hear the call. She heard Schuette comment that he was going to chop her up into little pieces and kill both her and her children. She recognized the voice as Schuette's, a regular customer at Don's Steak House, where she was employed at the time as a waitress.

Wright reported the call to the Sheriff's Department, and an investigating officer was sent in response. Wright's telephone had caller ID service. His caller ID showed, per his testimony as well as Holstead's and the investigating officer's, that there was a call placed to his home on May 26, 2000, at 7:20 a.m., from Daniel Schuette, accompanied by Schuette's phone number. The caller ID showed that another call from the same phone number was received at 7:21 a.m., but no name registered for that call. The number displayed on the caller ID was the same as that listed for Daniel F. Schuette in both the 1999-2000 and 2000-2001 Southwestern Bell telephone directories.

Schuette was charged and convicted of one count of criminal threat and one count of harassment by telephone. He was sentenced to 12 months' probation, with an underlying prison sentence of 6 months for the felony charge. He appeals, claiming that the caller ID evidence was improperly admitted and the two crimes for which he was charged and convicted were multiplicitous.

*Caller ID evidence*

In arguing the trial court erred in admitting the caller ID evidence, Schuette contends (1) there was not a sufficient foundation laid, (2) the caller ID evidence was inadmissable hearsay, and (3) admission of testimony concerning the caller ID information violated the best evidence rule.

Generally, the admission of evidence lies in the sound discretion of the trial court. "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could

differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *State v. Whitesell*, 270 Kan. 259, 276, 13 P.3d 887 (2000).

Schuette argues that because the trial court failed to require any foundation to admit the caller ID evidence, it committed a mistake of law over which this court's review is plenary, citing *Kuhn v. Sandoz Pharmaceuticals Corp.*, 270 Kan 443, 445-456, 14 P.3d 1170 (2000). In *Kuhn*, expert medical testimony was excluded by the trial court based on the test pronounced in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). We held that admission of the particular expert testimony was not subject to the *Frye* test, reversing the district court's summary judgment and remanding with instructions. In deciding whether the *Frye* test was applicable, we noted that while generally the admission of evidence is reviewed for abuse of discretion, it is a question of law as to whether the *Frye* test should be applied.

Schuette correctly points out there are no Kansas cases which have articulated the necessary foundation for caller ID evidence. Schuette proposes that foundation testimony must establish (1) the scientific or technical principles employed by the caller ID unit, (2) the device was working properly and reliably on the date in question, and (3) the operator of the caller ID unit was sufficiently qualified to use the device. He relies on the Kansas decisions of *State v. Lowry*, 163 Kan. 622, 185 P.2d 147 (1947), *State v. Estill*, 13 Kan. App. 2d 111, 764 P.2d 455 (1988), *rev. denied* 244 Kan. 739 (1989), and *State v. Primm*, 4 Kan. App. 2d 314, 606 P.2d 112 (1980).

*Prim* and *Lowry* are factually distinguishable. In *Prim*, the Kansas Court of Appeals considered whether read outs from police radar units were admissible, and the analysis was clearly limited to cases pertaining to radar. 4 Kan. App. 2d at 315-17. In *Lowry*, this court considered and rejected the admissibility of lie detector tests. 163 Kan. 622. Both situations differ from our facts.

In *Estill*, the Court of Appeals considered the admissibility of a computer-generated "phone trap" record The court explained that a phone trap is where "a telephone company computer traces all calls made to [the requesting customer's] number and records and

stores the numbers of the phones from which the calls originated." 13 Kan. App. 2d at 112. A Southwestern Bell employee testified the records were kept in the ordinary course of business. He could not testify, on cross-examination, as to the internal operations of the computer. After citing decisions from several jurisdictions pertaining to the admissibility of similar electronic devices, the court concluded:

> "We are of the opinion the trial court properly admitted the evidence as a business record. The question of reliability goes to the weight of the evidence and not to its admissibility. The evidence here concerns the method used to employ the trap. A corresponding log attests to the accuracy and trustworthiness of the computer, and the fact that harassing calls were traced to two separate numbers, both tied to the defendant, adds to the information's reliability and trustworthiness." 13 Kan. App. 2d at 116.

The *Estill* court analyzed the opinions of *People v. Holowko*, 109 Ill. 2d 187, 191, 486 N.E.2d 877 (1985), and *State v. Armstead*, 432 So. 2d 837 (La. 1983), which both agreed that computer-generated data (data which is reflective of the internal operations of a computer system), as opposed to computer-stored data (data which is placed into a computer by an out-of-court declarant), should be treated as nonhearsay:

> " 'The evidence is generated instantaneously as the telephone call is placed, without the assistance, observations, or reports from or by a human declarant. The printouts of such data are merely the tangible result of the computer's internal operations.' . . .
>
> "The court in *Armstead* noted that the underlying rationale of the hearsay rule is that out-of-court statements are made without an oath and their truth cannot be tested by cross-examination. 'With a machine, however, there is no possibility of a conscious misrepresentation, and the possibility of inaccurate or misleading data only materializes if the machine is not functioning properly.' 432 So. 2d at 840.
>
> " 'Since the computer was programmed to record its activities when it made the telephone connections, the printout simply represents a self-generated record of its operations, much like a seismograph can produce a record of geophysical occurrences, a flight recorder can produce a record of physical conditions onboard an aircraft, and an electron microscope can produce a micrograph, which is a photograph of things too small to be viewed by the human eye.' 432 So. 2d at 840." 13 Kan. App. 2d at 114.

Two opinions concerning the admissibility of caller ID evidence, cited and relied on by both parties, are also referenced by the Wright and Gold Treatise of Federal Practice and Procedure on Evidence. In discussing Fed. R. Evid. 901(b)(5), authentication of voice identification, the treatise notes:

"Caller ID is a device that displays for the recipient of a telephone call the number of the telephone from which the call was made. While Caller ID information may be admitted to prove the source of the call, a foundation is necessary to establish the proper functioning of that device. [Citations omitted.]" 31 Wright & Gold, Federal Practice and Procedure: Evidence § 7110 n.42 (2000).

The cited opinions are *Culbreath v. State*, 667 So. 2d 156 (Ala. Crim. App. 1995), and *Tatum v. Commonwealth*, 17 Va. App. 585, 588-89, 440 S.E.2d 133 (1994).

In *Tatum*, the Virginia court considered as a matter of first impression the admissibility of caller ID evidence. After first holding that caller ID evidence is not hearsay because it is computer-generated information, with no out-of-court declarant, the court analyzed the issue of reliability. The court noted the recipient of the call had received other calls from this particular individual in the past, of which he was able to recall at least one specific instance, and the same number registered on the caller ID. The court found that this was sufficient to show the caller ID device attached to the witness' phone was reliable.

In *Culbreath*, caller ID evidence was introduced against the defendant. On appeal, he argued the evidence was hearsay, the witness who introduced the reading was not an expert, and the *Frye* standards were not met. The court rejected all of the defendant's arguments, finding the only prerequisite to admission of caller ID evidence was a showing of reliability of the device used. In so holding, the court relied on *Tatum*. The court noted that reliability of the particular caller ID device was shown through the victim's testimony, specifically that each time she received the harassing phone calls she would activate her caller ID and the same number would appear for each call. 667 So. 2d at 162.

The logic of *Tatum, Culbreath*, and *Estill* is sound. The foundation requirement of reliability is satisfied through witness testimony that the caller ID device is or has in the past been operating

properly. In our present case, both Holstead and Wright testified that it was Schuette's voice on the other line during the second call. They both knew and recognized Schuette's voice. Schuette's number appeared on the caller ID display for that call, as well as his name and number on the call received just one minute earlier. This evidence supplies sufficient foundation to establish that the device was reliable.

Schuette's arguments that the users of the caller ID unit were not trained experts in its operation, as well as his contention that the underlying scientific principles must be introduced before admission of the evidence, are disingenuous. We take judicial notice that the operation of caller ID units does not require any advanced training; the record additionally reflects that by merely pressing arrow buttons, the user could review prior calls that were made. This fact is "so generally known or of such common notoriety within the territorial jurisdiction of the court that [it] cannot reasonably be the subject of dispute." K.S.A. 60-409(b)(3).

Schuette's claim that the *Frye* test must be applied, or some other scientific proof, in order to introduce caller ID evidence is rejected based on *Estill, Culbreath,* and *Tatum.*

Schuette's argument that caller ID evidence constitutes inadmissible hearsay appears to run contrary to every jurisdiction that has broached this matter. Each court has held that caller ID displays are merely computer generated read outs and not hearsay statements of persons or electronically regenerated hearsay statements. *Bowe v. State*, 785 So. 2d 531, 532 (Fla. Dist. App. 2001); *Inglett v. State*, 239 Ga. App. 524, 526, 521 S.E.2d 241 (1999); *Culbreath,* 667 So. 2d at 162; *Tatum,* 17 Va. App. at 588.

Schuette's citation to *Estill* is not persuasive. The court's holding did not "necessarily recognize" that phone trap records must come in through the business records exception; rather, the court merely affirmed the trial court's admission of the evidence through that exception. The court never specifically found whether phone trap records constituted hearsay. The caller ID display is not the output of statements from an out-of-court declarant but merely the result of the device's operations, which is not hearsay.

Schuette contends that admission of testimony concerning the caller ID display constitutes a violation of the best evidence rule. He claims that the only proper method of introducing the evidence would be to introduce the caller ID unit itself.

K.S.A. 60-467(a) states in relevant part: "As tending to prove the content of a writing, no evidence other than the writing itself is admissible, except as otherwise provided in these rules, unless the judge finds [one of the enumerated exceptions]." At issue is whether a caller ID display constitutes a writing.

K.S.A. 60-401(m) defines a "writing" as "handwriting, typewriting, printing, photostating, photographing and every other means of *recording upon any tangible thing* any form or communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof." (Emphasis added.)

Caller ID displays by their nature are not "recording[s] upon any tangible thing." The results cannot be printed out or saved on an electronic medium. As the prosecutor noted during arguments prior to trial, "when we unplug it, it's gone." Schuette's argument is akin to contending that a clock must be produced before a witness can testify as to the time he or she observed an accident. Schuette's best evidence argument is not persuasive.

Schuette's reliance on this court's holding in *State v. Muck*, 262 Kan. 459, 939 P.2d 896 (1997), is misplaced. In *Muck*, we upheld the trial court's exclusion of the results of a breath alcohol test due to the officer's failure to produce his certification card. 262 Kan. at 464-65. At trial, the State did not attempt to argue that the card had been lost, nor did it attempt to show compliance with any other statutory exceptions to the best evidence rule. Certification to use the equipment was required by statute. K.S.A. 8-1002(a)(3). The card is a tangible recording of the certification and not merely a phantasmagorical electronic display. As such, this case is entirely distinguishable and has no relevant application to the present facts.

As a final note, while only a few courts have squarely addressed the issue of admissibility of caller ID evidence, the evidence has been used in several criminal cases. See *United States v. Marshall*, 132 F.3d 63, 66 (D.C. Cir. 1998); *State v. Gordon*, 234 Ga. App. 551, 507 S.E.2d 269 (1998); *State v. Ware*, 795 So. 2d 495, 501

(La. App. 2001); *State v. Harris*, 145 N.C. App. 570, 581, 551 S.E.2d 499 (N.C. 2001). It also appears that caller ID evidence aided in the discovery and conviction of the defendant in our recent decision of *State v. Kleypas*, 272 Kan. 894, 40 P.3d 139 (2001).

*Multiplicity*

Schuette contends that his convictions of telephone harassment and criminal threat were multiplicitous. As we have recently held: "Whether convictions are multiplicitous is a question of law subject to unlimited review." *State v. Robbins*, 272 Kan. 158, 32 P.3d 171 (2001).

The most current pronouncement regarding multiplicity is found in *State v. Garcia*, 272 Kan. 140, 143-44, 32 P.3d 188 (2001):

"Multiplicity is the charging of a single offense in several counts of a complaint or information. The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense. *State v. Vontress*, 266 Kan. 248, 255, 970 P.2d 42 (1998). Such multiple punishments are prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *State v. Edwards*, 250 Kan. 320, 329, 826 P.2d 1355 (1992). . . .

"The concept of multiplicity in Kansas comes from two sources. The first is the traditional 'common-law' multiplicity concept. This exists where the State attempts to use a single wrongful act as the basis for multiple charges and is based on the merger of the charges. *State v. Garnes*, 229 Kan. 368, 372, 624 P.2d 448 (1981). This concept has been a part of Kansas law since at least our decision in *State v. Colgate*, 31 Kan. 511, 515, 3 P. 346 (1884), wherein we stated: '[U]pon general principles a single offense cannot be split into separate parts, and the supposed offender be prosecuted for each of such separate parts, although each part may of itself constitute a separate offense.' The test for whether the offenses merge and are, therefore, multiplicitous is whether each offense charged requires proof of a fact not required in proving the other; if so, then the offenses do not merge and are not multiplicitous. *Garnes*, 229 Kan. at 373, 624 P.2d 448. Offenses also do not merge if they are committed separately and severally at different times and at different places. 229 Kan. at 373, 624 P.2d 448."

The second source, or layer, of the multiplicity analysis formerly came by statute in K.S.A. 21-3107(2)(d). K.S.A. 21-3107(2)(d) defined an included offense as "a crime necessarily proved if the crime charged were proved" and stated that a defendant could not be convicted of both the crime charged and the included offense.

This statute was amended in 1998, and subsection (2)(d) was eliminated. L. 1998, ch. 185, sec. 1. It was replaced with language defining an included crime as "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged." See K.S.A. 2001 Supp. 21-3107(2)(b). The present statutory language in essence mirrors the common-law elements test, thereby leaving it as the only remaining test for multiplicity. See also *State v. Saiz*, 269 Kan. 657, 662-63, 7 P.3d 1214 (2000) (for crimes committed after effective date of 1998 amendment of K.S.A. 21-3107, second prong of *State v. Fike*, 243 Kan. 365, 757 P.2d 724 [1988] disregarded).

Criminal threat is defined in relevant part as "any threat to . . . [c]ommit violence communicated with intent to terrorize another." K.S.A. 21-3419(a)(1). Harassment by telephone is, for purposes applicable to this charge, "use of telephone communication for. . . making a telephone call, whether or not conversation ensues, . . . with intent to abuse, threaten or harass any person at the called number." K.S.A. 21-4113(a)(2).

As stated previously: "The test for whether the offenses merge and are, therefore, multiplicitous is whether each offense charged requires proof of a fact not required in proving the other; if so, then the offenses do not merge and are not multiplicitous." *Garcia*, 272 Kan. at 143-44.

Schuette contends that the element of intent to terrorize as required for criminal threat is the same as intent to harass, abuse, or threaten by telephone. This point is immaterial in resolving whether criminal threat and telephone harassment are multiplicitous under the present charges.

Criminal threat requires that the threat be communicated. Communication is not a required element of harassment by telephone. Harassment by telephone requires using a telephone with the intent to harass, abuse, or threaten the person called. A defendant need not use a telephone in order to be found guilty of criminal threat. In that criminal threat requires proof that the threat was communicated and telephone harassment does not, and telephone harassment requires proof that the telephone was used and crim-

inal threat does not, the two offenses do not merge in the present context. Schuette's convictions are, therefore, not multiplicitous.

Schuette's additional arguments are not persuasive. First, Schuette's conclusion that "telephone harassment is actually a telephone communication expressing an intent to inflict, among other things, physical harm" is erroneous. K.S.A. 21-4113(a)(2) prohibits use of the telephone itself for harassment and other listed purposes, not the actual communication of the threats. As stated at the beginning of the statute: "Harassment by telephone is *use of telephone communication* for any of the following purposes." (Emphasis added.) K.S.A. 21-4113(a). The particular subsection applicable here also states "making a telephone call, *whether or not conversation ensues*." (Emphasis added.) K.S.A. 21-4113(a)(2). Hence, it is the use of the telephone as an instrument of harassment that the statute seeks to prevent. Further supporting this conclusion is the legislature's classification of telephone harassment as a nonperson misdemeanor. K.S.A. 21-4113(d).

Second, Schuette purports that two convictions cannot arise from a single act or transaction. In support, he cites to *State v. Warren*, 252 Kan. 169, 175, 843 P.2d 224 (1992), in which this court stated:

" 'Multiplicity in the crimes charged exists if the crimes charged are based on "a series of violent acts occur[ring] simultaneously." *State v. Cathey*, 241 Kan. 715, 720, 741 P.2d 738 (1987); see *State v. Smith*, 245 Kan. 381, 392, 781 P.2d 666 (1989). This court has found offenses multiplicitous if the "defendant's conduct constituted a single continuous transaction" or "one continuing unbroken act of force." *State v. Bishop*, 240 Kan. 647, 653-54, 732 P.2d 765 (1987).' "

Schuette is correct that a defendant cannot be convicted and punished for two crimes whose elements merge if they are derived from the same act or from conduct that constituted a single continuous transaction. However, the attempt to apply this statement in the present context fails where the elements do not merge.

Both convictions are affirmed.