NOT DESIGNATED FOR PUBLICATION

No. 119,809

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CLARENCE O. KELLUM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Opinion filed April 3, 2020. Affirmed.

*Christopher R. Cuevas*, of Kansas City, for appellant.

*Ethan Zipf-Sigler*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., HILL and BUSER, JJ.

BUSER, J: Clarence O. Kellum appeals his convictions for two counts of vehicular homicide and speeding. Kellum raises two issues on appeal. First, he contends the district court erred by admitting testimony regarding accident data recovered from his vehicle because the State failed to provide an evidentiary foundation for its admission. Second, Kellum claims there was insufficient evidence to support his vehicular homicide convictions. Upon our review, we affirm Kellum's convictions.

1

FACTUAL AND PROCEDURAL BACKGROUND

On April 15, 2017, Kellum was involved in a two-vehicle collision in Kansas City, Kansas. Kellum's vehicle struck an SUV as it made a left-hand turn to enter an apartment complex. The two occupants of the SUV—Samuel Vissepo-Quinones and Bryan Vierra-Duran—died as a result of the collision.

The State charged Kellum, in part, with two counts of second-degree murder. These two counts were charged in the alternative as involuntary manslaughter while driving under the influence. The State also charged Kellum with three counts of aggravated endangering a child, driving under the influence (DUI), improper use of a wireless device while driving, and speeding.

During the jury trial, Michael Carrothers, a Kansas City firefighter, testified that he was stationed on 55th Street on April 15, 2017. At about 12:30 a.m., Carrothers was outside the fire station when he heard a vehicle traveling northbound on 55th Street. Carrothers looked and saw a black sedan traveling "excessively fast," and he hoped police officers would stop the vehicle because of its speed. Kellum was the driver of the black sedan.

About one or two seconds after Kellum drove by him, Carrothers heard tires screech and two impacts, but he could not see the collision. Carrothers responded to the scene of the collision with fellow firefighters. He observed Kellum's vehicle and an SUV. The driver of the SUV was still in the vehicle but Kellum had exited his vehicle. Kellum told Carrothers that the SUV pulled out in front of him. Kellum expressed concern about his three daughters who were in his vehicle.

Carrothers described the roadway where the accident took place as straight and without curves. Kellum's vehicle sustained front-end damage. The SUV had passenger-

side damage where Kellum struck the vehicle and damage on the vehicle's roof where the SUV then struck a telephone pole. Carrothers noted that the damage to the vehicles was consistent with Kellum's claim that the SUV drove in front of him to turn into an apartment complex.

When Kansas City, Kansas police officers arrived at the scene, Kellum was sitting in a parking lot and holding one of his daughters. After handing his daughter to the officers, Kellum stood up and tried to get into his vehicle. Officer Adriane Ferrer stopped Kellum from entering the vehicle. The officer noted that Kellum had "very poor balance" and she grabbed ahold of him to prevent him from falling. Officer Ferrer instructed Kellum to remain sitting because of his poor balance but Kellum was uncooperative. Officer Ferrer smelled the odor of alcohol coming from Kellum's breath. As a result, the officer detained Kellum and placed him in her patrol vehicle.

After arresting Kellum, Officer Ferrer helped Kellum contact his mother to care for his children. An ambulance transported Kellum to the hospital. While at the hospital, Kellum admitted that he drank a couple of beers that night and told a nurse, "It wasn't that far. I didn't think it would be a problem. I was just at a friend's house having some beers." After Kellum refused to consent to blood-alcohol concentration (BAC) testing, officers obtained a search warrant to collect a sample of Kellum's blood for the testing of alcohol consumption. The Kansas Bureau of Investigation (KBI) tested the blood sample and it revealed that Kellum had a BAC of .10. A KBI forensic expert opined that a BAC of .10 would negatively impact a person's ability to safely operate a vehicle by impairing judgment, reaction time, and coordination.

An autopsy revealed that Vissepo-Quinones—the driver of the SUV—ingested cocaine and alcohol before the collision occurred. Vissepo-Quinones had recently used the cocaine before he died and he had a BAC of .094 at his time of death. A forensic

3

pathologist testified that Vissepo-Quinones would have been impaired by ingesting alcohol and cocaine at the time the collision occurred.

Detective James Gunzenhauser was assigned to investigate the collision. Before the State called Detective Gunzenhauser to testify at trial, Kellum objected to the detective's anticipated testimony that Kellum was driving 101 miles per hour shortly before the accident. Kellum noted that Detective Gunzenhauser's testimony regarding his speed would be based on a crash data recorder (CDR) recovered from his vehicle. Kellum objected to the lack of foundation for Detective Gunzenhauser's anticipated testimony, arguing that the officer who downloaded the data from the CDR—Officer Chuck Seawood—was a necessary witness. Kellum suggested that without Officer Seawood as a witness, he would be unable to determine whether the downloaded equipment was properly functioning or question how the download occurred.

The State responded to Kellum's objection by arguing that Detective Gunzenhauser could establish an evidentiary foundation because he knew how to download CDR information, he knew how to read and interpret that information, and he witnessed Officer Seawood download the CDR information. The State claimed that Kellum's concerns related to the weight, not admissibility of the CDR evidence. The district court overruled Kellum's prelimenary objection and determined it needed to hear from Detective Gunzenhauser before it made a final ruling.

At trial, Detective Gunzenhauser testified regarding his training and experience in investigating vehicular accidents. Detective Gunzenhauser received basic accident investigation training in 1994 when he became a law enforcement officer. Later, he obtained advanced accident investigation training, which involved more in-depth measurements and diagramming skills, and attendance at an accident reconstruction school. Detective Gunzenhauser began investigating fatality accidents about three years

4

before trial. During that time, the detective investigated approximately 70 fatal or life-threatening accident scenes.

At trial, Detective Gunzenhauser first testified regarding his observations of the crash scene. The detective testified that the SUV was traveling southbound on 55th street when the driver tried to make a left-hand turn into an apartment complex. According to Detective Gunzenhauser, Kellum's vehicle was traveling northbound when it collided with the SUV. Based on damage to the vehicles, the detective determined that the impact occurred at a high-speed. Of note, the SUV had its headlights and turn signal on at the time of the collision.

Detective Gunzenhauser explained that he also had received training on examining crash data recorded on a vehicle's CDR. The purpose of this training was to teach participants to interpret information downloaded from a CDR. During this training, Detective Gunzenhauser observed a scenario where a CDR report revealed corrupted data.

After Detective Gunzenhauser testified regarding his training, the State sought to offer him as an expert on interpreting crash data from a CDR. The district court allowed Kellum to voir dire the detective regarding his qualifications as an expert. During this questioning, Detective Gunzenhauser agreed that the Kansas City, Kansas Police Department did not have the equipment required to download CDR information. Instead, his department used equipment owned by either the Lenexa or Shawnee Police Departments. Detective Gunzenhauser admitted that he never personally downloaded information from a CDR.

After Kellum concluded his voir dire, he argued that Detective Gunzenhauser was not an expert on examining crash data reports. The district court ruled that Detective Gunzenhauser was qualified to read the CDR information. However, the district court

questioned the State's foundation to admit the CDR information because it had not yet established how that information was collected. Kellum requested a continuing objection to Detective Gunzenhauser's testimony regarding the CDR information because "Officer Seawood is not here to testify about that data." The district court granted Kellum's continuing objection.

Detective Gunzenhauser next explained that Officer Seawood from the Shawnee Police Department used a "Bosch reader" and a laptop to obtain the information from the CDR in Kellum's vehicle. Officer Seawood downloaded the information to a thumb drive and gave the thumb drive to Detective Gunzenhauser. Of note, Detective Gunzenhauser was present when Officer Seawood downloaded the information from Kellum's CDR. Based on his training and experience, Detective Gunzenhauser determined that the downloaded CDR report was not corrupted.

Relying on the CDR report, Detective Gunzenhauser testified that Kellum's vehicle was traveling 101 miles per hour in a 30 mile-per-hour zone five seconds before impact. The CDR also recorded the vehicle's speed at every half-second interval before the collision. Without additional objection, Detective Gunzenhauser noted the CDR report revealed that Kellum's vehicle was traveling the following speeds before the accident:

4.5 seconds = 101 miles per hour
4 seconds = 101 miles per hour
3.5 seconds = 93 miles per hour
3 seconds = 85 miles per hour
2.5 seconds = 92 miles per hour
2 seconds = 86 miles per hour
1.5 seconds = 84 miles per hour
1 second = 78 miles per hour

6

.5 seconds = 68 miles per hour

Detective Gunzenhauser explained that Kellum began braking during the last 3.5 seconds before impact. The detective opined that persons near the crash site would not have seen Kellum's vehicle driving towards them until three seconds before impact.

At the instructions conference, the parties agreed not to instruct the jury on the speeding charge. The jury found Kellum guilty of two counts of the lesser included offense of vehicular homicide. The district court also found Kellum guilty of speeding. The district court sentenced Kellum to 12 months of probation, with an underlying jail term of 12 months, and an $810 speeding fine. Kellum appeals.

## ADMISSIBILITY OF THE CDR REPORT TESTIMONY

On appeal, Kellum contends the district court erred by allowing Detective Gunzenhauser to testify regarding the contents of the CDR. Kellum first argues this testimony was inadmissible because the CDR report was not admitted in evidence and, therefore, was neither perceived by nor made known to Detective Gunzenhauser when he testified at trial. Next, Kellum asserts the State failed to present an adequate foundation for the detective's testimony because he did not personally download the CDR information, he was not trained to download that information, and Officer Seawood, who did download the information, did not testify. The State responds that Kellum failed to preserve this issue for appeal.

*Preservation*

K.S.A. 60-404 generally precludes this court from reviewing an evidentiary challenge absent a timely and specific objection made on the record when the evidence is presented at trial. *State v. Miller*, 308 Kan. 1119, 1159, 427 P.3d 907 (2018).

Additionally, a party may not object to the admission of evidence on one ground at trial and argue a different ground on appeal. *State v. Campbell*, 308 Kan. 763, 770, 423 P.3d 539 (2018). One purpose of the contemporaneous objection rule is to provide the district court with the opportunity to conduct the trial without exposure to tainted evidence. *State v. Brown*, 307 Kan. 641, 645, 413 P.3d 783 (2018). "This rule not only gives the trial court the opportunity to address the issue, but practically it also constitutes 'one of necessity if litigation is ever to be brought to an end.'" 307 Kan. at 645 (quoting *State v. Fisher*, 222 Kan. 76, 83, 563 P.2d 1012 [1977]).

Whether a party preserved an objection for appellate review is a question of law subject to unlimited review. *Campbell*, 308 Kan. at 770. Kellum makes two arguments in support of his complaint that Detective Gunzenhauser's testimony regarding the CDR report was inadmissible. First, Kellum asserts that under *State v. Gonzalez*, 282 Kan. 73, 87, 145 P.3d 18 (2006), "an expert is prohibited from giving an opinion based on facts or data not 'perceived by or personally known or made known' to the expert at trial." Relying on this premise, Kellum claims that—because the CDR report was not admitted in evidence—the report was not made known to Detective Gunzenhauser and the district court erred by allowing him to testify regarding its contents.

But Kellum never raised this objection at trial. The issue identified in *Gonzalez*—which Kellum now raises on appeal—differs from the objections he made at trial. In *Gonzalez*, the defendant presented an expert to testify about Gonzalez' competency to stand trial. But the State objected on hearsay grounds because the expert testimony relied on California medical records which had not been admitted in evidence. The *Gonzalez* court noted that K.S.A. 60-456(b) precluded an expert witness from giving an opinion based on facts or data not "'perceived by or personally known or made known'" to the witness at the hearing. 282 Kan. at 87. Since the phrase "at the hearing" referred to facts admitted in evidence, our Supreme Court found that expert opinions based on hearsay were inadmissible. 282 Kan. at 87. Accordingly, the California medical records—which

8

were inadmissible hearsay—could not form the basis for the expert's opinion under K.S.A. 60-456(b) regarding the defendant's competency.

We note the language in *Gonzalez* that Kellum relies on has been abrogated by the Kansas Legislature. When *Gonzalez* was decided, K.S.A. 60-456(b) provided that opinion testimony by expert witnesses was limited to opinions "(1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness." However, in 2014, the Kansas Legislature amended K.S.A. 60-456 through K.S.A. 60-458. L. 2014, ch. 84, § 2-4. Now K.S.A. 2019 Supp. 60-458 explicitly provides that expert testimony may be based on facts or data not admitted into evidence:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible into evidence in order for the opinion or inference to be admitted."

Regardless, unlike the State's objection in *Gonzalez*, Kellum did not object to Detective Gunzenhauser's testimony on hearsay grounds. Kellum never argued that the detective's testimony was inadmissible because the State failed to admit the CDR report in evidence. Instead, Kellum's continuing objection only maintained that Detective Gunzenhauser's testimony regarding the CDR information lacked an evidentiary foundation because Officer Seawood, the officer who actually downloaded the CDR information from Kellum's vehicle, was unavailable to testify at trial. Since Kellum failed to object to Detective Gunzenhauser's testimony on the grounds that the CDR report was not admitted in evidence, he failed to preserve this argument for appeal.

Turning to Kellum's second argument, we next consider whether Kellum's objection that Detective Gunzenhauser could not provide an adequate foundation for testimony regarding the CDR report was preserved for appeal.

If a party makes a continuing objection to the admissibility of evidence, the failure to object when the evidence is later admitted does not bar appellate review. *McKissick v. Frye*, 255 Kan. 566, 582, 876 P.2d 1371 (1994). Here, Kellum lodged a specific continuing objection to Detective Gunzenhauser's testimony, arguing Officer Seawood needed to lay a foundation for evidence of the CDR report. Kellum explained that Detective Gunzenhauser could not provide an evidentiary foundation because his department did not own the downloading equipment and he did not personally download the CDR information. The district court noted that Kellum "protected [the] record" on that objection.

Kellum preserved his argument that the State failed to provide a sufficient foundation for Detective Gunzenhauser's testimony regarding the CDR report. Despite the State's objection that this issue was not preserved, we are persuaded that it merits our consideration on appeal.

*Analysis of Objection to Foundation*

"Evidentiary foundations come in all shapes and sizes, so there's no one-size-fits-all rule beyond the idea that the evidence be reliable enough to consider." *Woessner v. Labor Max Staffing*, 56 Kan. App. 2d 780, 793, 437 P.3d 992 (2019), *rev. granted* 310 Kan. ___ (September 19, 2019). The district court thus has considerable discretion when deciding whether evidentiary foundation requirements have been met. The district court's determination will not be reversed absent an abuse of that discretion. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015).

Whether a party laid an adequate evidentiary foundation is a question of fact. As a result, we will not disturb the district court's finding if substantial competent evidence supports its decision. 302 Kan. at 73. Substantial competent evidence is such legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019).

"'The proponent of a particular kind of evidence, whether it be a physical object or the testimony of a witness, is required to lay a foundation before it may be admitted into evidence.'" *Wiles*, 302 Kan. at 74 (quoting 3 Barbara, Kansas Law and Practice, Lawyers Guide to Kansas Evidence, § 1.9, p. 28 [5th ed. 2013]). No evidentiary rule explicitly requires a foundation for admission. Instead, a foundation is a "'loose term for preliminary questions designed to establish that evidence is admissible.'" *Wiles*, 302 Kan. at 74 (quoting *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 [7th Cir. 2001]). The purpose of a sufficient foundation is to prevent the finder of fact from being exposed to inadmissible evidence. *Wiles*, 302 Kan. at 74.

Detective Gunzenhauser's testimony established that the CDR data was computer-generated information. Computer-generated information is a record entirely self-generated by the internal operations of a computer system and is not hearsay. See *State v. Schuette*, 273 Kan. 593, 596-98, 44 P.3d 459 (2002), *disapproved of on other grounds by State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006). At trial, Detective Gunzenhauser explained that the CDR data was self-generated and stored by the internal operations of the vehicle's CDR. Since the CDR report was a computer-generated read out, it is not hearsay. *Schuette*, 273 Kan. at 598.

Although the CDR data is not hearsay, "Kansas courts require foundation testimony of the method of recording and the proper functioning of a mechanical device before the information obtained from the device is admissible." *State v. Estill*, 13 Kan. App. 2d 111, 114-15, 764 P.2d 455 (1988); see *Schuette*, 273 Kan. at 597-98 (noting a

11

foundation requirement of reliability which is satisfied through witness testimony providing that the device was operating properly). But even without testimony from Officer Seawood, a reasonable person could find that the State presented sufficient evidence to establish that the CDR was functioning properly and produced reliable information.

During trial, Detective Gunzenhauser testified regarding how a vehicle's CDR records information. Detective Gunzenhauser explained that Kellum's specific CDR would be triggered at a five-mile-an-hour impact and recorded data such as speed, seat belt usage, and cruise control usage. When triggered, the CDR stores this data and the information cannot be manipulated or removed. Detective Gunzenhauser testified that he received training on examining the data recorded from a vehicle's CDR. Based on his training, Detective Gunzenhauser determined the information downloaded from Kellum's CDR was not corrupted.

While Detective Gunzenhauser was not trained on using the CDR download equipment, he knew from personal experience how to use it. He watched others download information from a CDR about 15 or 20 times. On this occasion, Detective Gunzenhauser watched Officer Seawood use the same downloading equipment that other Shawnee officers used in his presence. Detective Gunzenhauser saw no glitches, connection troubles, or any other download problems when Officer Seawood obtained the data from Kellum's CDR. Moreover, the detective's testimony that the vehicles' respective damage suggested a high-speed impact collision adds to the reliability and trustworthiness of the CDR report. See *Estill*, 13 Kan. App. 2d at 116. The evidence provides a sufficient foundation to establish that the CDR was properly functioning and the information contained in the CDR report was reliable.

Relying on *State v. Hurd*, No. 113,867, 2016 WL 3128771 (Kan. App. 2016) (unpublished opinion), Kellum argues that the individual who downloaded the data—

Officer Seawood—must testify before the CDR data was admissible in evidence. In *Hurd*, the district court admitted information collected from Hurd's cellphone in evidence even though the person who downloaded the information did not testify. A detective said he took the cellphone to "ITC" and ITC made an image of the cellphone's contents before categorizing the cellphone's information. 2016 WL 3128771, at *3.

On appeal, Hurd contended the State failed to provide an adequate foundation to admit the cellphone evidence. Our court did not directly address whether an adequate foundation was laid, but our court held that any potential error by the district court was harmless. 2016 WL 3128771, at *6. In dicta, our court noted, "[a]t the very least, it would seem that the State should have called the technician who downloaded the information from [Hurd's] cellphone to identify the software used and established the technician's familiarity with the software and confirmed its accuracy." 2016 WL 3128771, at *6.

Unlike the detective's testimony in *Hurd*, Detective Gunzenhauser could identify the equipment used and established his familiarity with the software used to download the CDR information. Detective Gunzenhauser identified that Officer Seawood used a Bosch system with a crash data retrieval tool which operated with the most recent version of the software at the time. The detective had observed this equipment in use and testified the he could personally operate the equipment. Finally, based on his training, Detective Gunzenhauser was able to determine the information was not corrupted.

The district court's determination that the State laid an adequate evidentiary foundation is supported by substantial competent evidence. We find that the district court did not abuse its discretion by admitting Detective Gunzenhauser's testimony about the CDR report.

13

Kellum next contends there was insufficient evidence at trial to support his convictions of vehicular homicide. Kellum asserts that even if he were driving 101 miles per hour, the State's evidence was insufficient because speeding alone does not support a conviction for vehicular homicide.

When the sufficiency of evidence is challenged in a criminal case, we review all evidence in the light most favorable to the State. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). The conviction will be upheld if we are convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt based on that evidence. 307 Kan. at 668. In determining whether there is sufficient evidence to support a conviction, our court generally will not reweigh the evidence or reassess witness credibility. 307 Kan. at 668. Additionally, a verdict may be supported by circumstantial evidence if that evidence provides a basis for a reasonable inference by the fact-finder on the fact in issue. To be sufficient, circumstantial evidence need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

Vehicular homicide is defined in K.S.A. 2019 Supp. 21-5406(a):

> "Vehicular homicide is the killing of a human being committed by the operation of an automobile . . . in a manner which creates an unreasonable risk of injury to the person or property of another and which constitutes a material deviation from the standard of care which a reasonable person would observe under the same circumstances."

As used in the vehicular homicide statute, a "material deviation" is conduct amounting to more than simple or ordinary negligence but does not amount to gross and wanton negligence. *State v. Krovvidi*, 274 Kan. 1059, 1069, 58 P.3d 687 (2002); K.S.A.

14

2019 Supp. 21-5406(c). The totality of the circumstances must be considered when determining whether the manner in which the defendant operated the vehicle amounted to a material deviation from ordinary due care. 274 Kan. at 1069. In *Krovvidi*, the court held that a defendant's action of inattentively running a red light without other aggravating factors present—such as drinking, drug use, reckless driving, accelerating while approaching an intersection, or speeding—was not a material deviation from the ordinary standard of care. 274 Kan. at 1075.

Citing *Perry v. Schmitt*, 184 Kan. 758, 339 P.2d 36 (1959), Kellum argues that speeding alone cannot establish a material deviation from the ordinary standard of care. In *Perry*, the defendant argued that evidence of his speed failed to establish gross and wanton negligence. The court noted that "[w]hile speed alone is not sufficient to establish gross and wanton negligence, it is properly considered along with other facts and circumstances surrounding the occasion in determining whether defendant was guilty of wantonness." 184 Kan. at 763. The *Perry* court ultimately held that sufficient evidence supported the jury's finding of gross and wanton negligence because the defendant had been drinking, he drove 80 to 85 miles per hour on a highway, and the incident occurred on Christmas Eve when traffic was expected to be heavy.

Although speed alone may not establish gross and wanton negligence, vehicular homicide requires less culpability than that examined in *Perry*. Moreover, the degree of a speeding violation, when considered with the factual circumstances of the case, may be considered an aggravating factor supporting a material deviation from the ordinary standard of care. *State v. Hazlett*, No. 109,999, 2014 WL 4916558, at *9 (Kan. App. 2014) (unpublished opinion) ("[I]f the [traffic] violation is speeding, the degree of speeding could be an aggravating factor."). Our Supreme Court has recognized that under certain circumstances, speeding may amount to a material deviation:

"A driver of a vehicle exceeding the speed limit by 5 miles per hour would be in violation of the statute or ordinance establishing the same but would not be considered to be materially deviating from the standard. On the other hand a violation of exceeding the limit by 30 miles per hour, under certain circumstances such as in a school zone, might be a material deviation." *State v. Randol*, 226 Kan. 347, 354, 597 P.2d 672 (1979).

During trial, the State presented evidence that Kellum was driving over 100 miles per hour in a residential area with a 30 mile-per-hour speed limit just before the collision. Kellum's excessive speeding occurred at night and while he was intoxicated. Kellum admitted to drinking before the collision, he had noticeably poor balance following the accident, and he had a BAC of .10 which would impair motor function and judgment.

Of note, although the jury acquitted Kellum of DUI, we may consider evidence of Kellum's intoxication in deciding whether the evidence supports the jury's guilty verdict on vehicular homicide. See *State v. Hargrove*, 48 Kan. App. 2d 522, 559-61, 293 P.3d 787 (2013) (Even if a jury acquits a defendant of one charge, the court may consider evidence common to that charge and a second charge in determining the sufficiency of the evidence supporting the jury's guilty verdict on the second charge.).

Here, the State presented sufficient evidence from which a rational jury could find that Kellum's conduct amounted to more than ordinary or simple negligence under the totality of the circumstances. Viewing the evidence in the light most favorable to the State, we find that a rational jury could have found Kellum guilty of vehicular homicide beyond a reasonable doubt. Accordingly, Kellum's convictions of vehicular homicide are supported by sufficient evidence.

Affirmed.